UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81223-CIV-MARRA/MATTHEWMAN

FRED DEVRIES, and RUBY TEICH,
individually and on behalf of all
others similarly situated,

      Plaintiffs,

vs.

MORGAN STANLEY & CO. LLC,
f/k/a Morgan Stanley & Co. Incorporated,
MORGAN STANLEY SMITH BARNEY
LLC, and MORGAN STANLEY,

      Defendants.

_____/

### OPINION AND ORDER GRANTING MOTION TO CONDITIONALLY CERTIFY

THIS CAUSE is before the Court upon Plaintiffs' Motion to Conditionally Certify

an FLSA Collective Action and Authorize Notice to Potential Class Members [DE 68].

The motion is fully briefed and ripe for review.  The Court has carefully considered

the filings and is otherwise fully advised in the premises.

### Introduction

Plaintiffs Fred Devries and Ruby Teich, together with opt-in Plaintiffs Michael

Aversano, Scott Belshaw, Kimberly Munsell, and Kent Jasperse (together, "Plaintiffs")

bring this action against Defendants Morgan Stanley & Co. LLC, Morgan Stanley Smith

Barney LLC ("MSSB"), and Morgan Stanley (collectively, "Morgan Stanley" or

"Defendants").  Plaintiffs are asserting claims under the Fair Labor Standards Act (the

"FLSA") for alleged unpaid overtime work performed as former and current pre-

production Financial Advisor Associates ("FAAs") throughout the United States who worked for Defendants.  After conducting limited discovery focusing only on conditional certification issues, Plaintiffs make this motion for court-supervised notice to other current and former pre-production FAAs nationwide to provide them an opportunity to join this lawsuit to seek unpaid overtime wages and other damages.

Morgan Stanley is a global financial services firm that, in providing products and services to its clients, employs FAAs at its branch locations throughout the United States.  DE 69, Answer ¶ 3.  Since August 2009, Morgan Stanley has had over 800 branches in all 50 states which have employed approximately 6,970 pre-production FAAs.  Katherine Koutsantonis ("Kout.") Decl. ¶¶ 4-5.  Pursuant to its national policies and procedures, Morgan Stanley required Plaintiffs and other FAAs to undergo a training period, typically four to six months, called the "pre-production" period.  The pre-production FAAs' duties include the completion of the required FAA training program course work, studying for and passing the Series 7 exam, studying for and passing the Series 66 exam, studying for and passing Morgan Stanley FAA Pre-Production Assessment exams, attending meetings, completing all FAA Training Program curriculum requirements and attending national performance sessions.  DE 1 at ¶ 5, Answer ¶ 5.

FAAs are eligible for overtime pay during this pre-production period under the FLSA.  Answer ¶ 4, Ex. M, MS 908.  Morgan Stanley has formal written policies

whereby "[a]ll non-exempt employees are required to maintain accurate time and attendance records" and "will be paid overtime," with "prior management approval," for work performed over forty hours per week.  MSSB's Compensation and Performance Guide, DE 68, Ex. M, MS 908; Kout. Decl. ¶ 9, Ex. B, ¶ 10, Ex. C. However, Plaintiffs allege that, despite Morgan Stanley's written policy to pay overtime, Defendants maintained a de facto "off-the-clock" overtime policy and practice of having pre-production FAAs work overtime, preventing them from recording their overtime hours, and/or preventing them from receiving compensation for overtime actually worked.  Specifically, Plaintiffs allege that Morgan Stanley branch managers and supervisors knew that pre-production FAAs were working overtime to satisfy the various demands of their jobs, but nonetheless instructed them not to accurately record their hours, altered or told pre-production FAAs to alter their time sheets to remove overtime hours worked, and/or otherwise pressured them not to report overtime hours actually worked.  Compl. ¶ 6.  According to Plaintiffs, as a result of Morgan Stanley's de facto policy, pre-production FAAs did not accurately report, or receive compensation for, their overtime hours.

**Legal Standard for FLSA Class Certification**

Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are "similarly situated" and give consent to become a party in a writing filed with the court.  29 U.S.C. § 216(b).  District courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs of the

pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996).

The initial issue is whether Plaintiffs have made the requisite showing to justify conditional certification of a nationwide collective action and court-authorized notice.  In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir. 2001), the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry.  *Id*. at 1219.  Under the first tier, which is labeled the "notice stage," the district court must decide, "usually based only on the pleadings and any affidavits which have been submitted[,] ... whether notice of the action should be given to potential class members."  *Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003)).  Before notice is given, a "district court should satisfy itself that there are other employees of the [defendant-] employer who desire to 'opt-in' and are 'similarly situated'...." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

"Similarly situated" is not defined in the FLSA.  Nor has the Eleventh Circuit Court of Appeals "adopted a precise definition of the term."  However, the Court of Appeals has provided some guidance.  *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259–60 (11th Cir. 2008).  Employees should be "'similarly situated' with respect to

their job requirements and with regard to their pay provisions." *Id.* at 1259 (citing *Dybach*, 942 F.2d at 1568). And "similar" does not mean "identical." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (citation and internal quotation marks omitted). At the same time, however, "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of duties and pay provisions." *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002), *cited with approval in Anderson v. Cagles's, Inc.,* 488 F.3d 945, 953 (11th Cir. 2007). "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

The plaintiffs' burden at the notice stage "is not heavy." *Grayson*, 79 F.3d at 1097. "The plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Id.* That burden may be satisfied by "substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (citation and internal quotation marks omitted). *Hipp* described this standard as "fairly lenient," given that generally the evidence is meager early in the litigation. 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214).

The second stage is "'typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial.'" *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F.3d at 1214). Armed

with "'much more information,'" the court "'makes a factual determination on the similarly situated question.'" *Id.* (quoting *Mooney*, 54 F.3d at 1214). Factors that the court may consider are the "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Morgan*, 551 F.3d at 1261 (citation, alterations and internal quotation marks omitted). At this stage, the similarities "must extend beyond the mere facts of job duties and pay provisions and encompass the defenses to some extent." *Id.* at 1262 (citation and internal quotation marks omitted). Depending on the outcome of the similarly situated evidentiary analysis, the district court either allows the collective action to proceed to trial, or decertifies the class, dismissing the opt-in plaintiffs without prejudice and permitting the original plaintiffs to go to trial on their individual claims. *See id.* (citing *Hipp*, 252 F.3d at 1314).

Despite this clear two-step framework, Defendants argue that Plaintiffs should be required to meet a more exacting standard than that typically applied at the first stage of the certification process because Plaintiffs make their motion after a five-month discovery period. *See, e.g.*, DE 81, Opp'n 5-7 of 21. Defendants rely on *Pickering v. Lorrilard Tobacco Co., Inc.*, 10-CV-633-WKW, 2012 WL 314691 (M.D. Ala. Jan. 30, 2012) for this contention because the initial stage of a bifurcated discovery schedule is complete. In *Pickering*, the district court found that:

[c]ourts have departed from *Hipp*'s more lenient standard where a

period of discovery preceded the filing of the motion for conditional certification of a collective action.  In *White*, because there had been "extensive discovery," the court "carefully consider[ed] the submission of the parties with respect to the class allegations, rather than merely relying on the handful of affidavits that support[ed] [the plaintiff's] position."  *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1313 n.2  (M.D. Ala. 2002).  In *Davis v. Charoen Pokphand (USA) Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004), the court also rejected the plaintiffs' argument for a *Hipp* first-stage review in favor of a more exacting review.  The *Davis* court explained that "[t]he rationale for the 'fairly lenient standard' ... disappears ... once plaintiffs have had an opportunity to conduct discovery with respect to defendant's policies and procedures." *Id.* at 1276 (internal citations omitted); *see also Ledbetter v. Pruitt Corp.*, No. 05cv329, 2007 WL 496451, at *2 (M.D. Ga. Feb. 12, 2007) (finding that, because the motion for certification was filed after the close of discovery, the case was "in a different procedural posture than that envisioned by *Hipp*" and "therefore a more searching standard of review [was] appropriate"); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (considering the defendant's evidence in deciding whether to conditionally certify an FLSA collective action because there was "fairly extensive evidence on the issue of whether putative class members [were] similarly situated"); *Brooks v. BellSouth Telecommunications, Inc.,* 164 F .R.D. 561, 566 (N.D. Ala. 1995) (analyzing the motion for conditional certification of a collective action in light of the extensive discovery conducted by the plaintiff).  The reasoning of the foregoing cases is persuasive.  *Hipp* envisions that the certification process will begin early in the litigation prior to discovery and, thus, gives plaintiffs some leeway in proof at the initial stage. When the parties have had access to discovery and the opportunity to amass evidence in support of the complaint's collective action allegations, the protection provided by *Hipp's* first stage review is no longer needed.  That is what happened in this case.  The parties asked the court to forego an initial decision on collective action certification, in favor of first permitting discovery.  The parties jointly requested, in all, four months to conduct discovery, and Mr. Pickering requested permission to file his motion for conditional certification of a collective action at the five-month mark.  Those requests were granted.  The rationale for applying the fairly lenient standard in *Hipp* no longer fits the procedural posture of this case.  It is appropriate, therefore, to apply a stricter, more searching, standard of review than that advocated in *Hipp* for a first-stage review.  Thus, Mr. Pickering will not be

permitted to rely on the allegations in the Amended Complaint. Rather, he must rely on the evidence, and all the evidence will be considered, not just Mr. Pickering's. With that said, the court need not define precisely where along the continuum of proof this case lies. If this case were at the beginning stages, it is dubious that Mr. Pickering would satisfy *Hipp's* fairly lenient standard. Moreover, after four months of discovery, Mr. Pickering has produced only limited evidence of the job duties of sales representatives in his region, and none of the job duties of sales representatives outside his region, and he has submitted no evidence that any other sales representative besides himself and one other regional sales representative actually worked overtime. It is clear based upon this evidence, standing alone and juxtaposed against Lorillard's evidence of sales representatives' duties outside Mr. Pickering's region, that the evidence is insufficient to warrant conditional certification of a nationwide collective action.

*Pickering v. Lorillard Tobacco Co., Inc.*, 10-CV-633-WKW, 2012 WL 314691, *8-9 (M.D. Ala. Jan. 30, 2012).

The reasoning in *Pickering* is sound, but when applied to this case, it yields a different result. After reviewing the pleadings, declarations, deposition testimony of Plaintiff Teich[1] and four opt-in Plaintiffs, and the extensive documentation produced in discovery submitted in connection with the instant motion, the Court finds that Plaintiffs have satisfied the burden of demonstrating that they were subject to a common policy or practice and were "similarly situated" to one another and to potential class members under either the lenient or the "more searching standard of review." Mark Zelek ("Zelek") Decl. ¶2.

---

[1] On May 14, 2013, the Court granted Plaintiff's Motion for Leave to File an Amended Complaint adding Ruby Teich as a second named plaintiff because Plaintiff Devries may not be able to proceed as the named Plaintiff in this litigation due to a serious medical issue. DE #s 28, 61, 65.

## Analysis

Plaintiffs assert that they have met their burden based on the following nine factors:

First, Morgan Stanley's "Playbook" for pre-production FAAs outlines in week-by-week detail the duties, responsibilities, and requirements of FAAs and Morgan Stanley's expectations for its FAAs.  Ex. G, MS 866-894.  Phase I of the Playbook applies to pre-production FAAs.  *Id*.  The Playbook applies to all of Morgan Stanley's FAAs across the United States and contains all of the duties which Morgan Stanley requires of the FAAs.  *Id*.; Teich Depo. at 47-48; Jasperse Depo. at 73, 83-84; Munsell Depo. at 71.

Second, Morgan Stanley's pre-production FAAs are all subject to the same FAA Phase I On-Boarding, which is the Associate Checklist and Best Practices.  Ex. I, MS 910-911.  The Checklist starts with the FAAs Day 1 and includes directives on meetings, orientation, and getting organized.  *Id*.  The Best Practices portion includes detailed directives on good work and study habits.  *Id*.

Third, all Morgan Stanley pre-production FAAs are subject to the various iterations of the Morgan Stanley Smith Barney Code of Conduct.  Ex. J, MS 912-965.

Fourth, all Morgan Stanley pre-production FAAs are required to use the same timekeeping system, called MyTime.  Ex. A (Teich Depo.) at 53-54; Ex. C (Munsell Depo.) at 64; Ex. E (Belshaw Depo.) at 28.

Fifth, Plaintiff Teich and four opt-in Plaintiffs were explicitly discouraged from

recording, or instructed not to record, more than 40 hours in a workweek (or were

told it would not even be captured), regardless of the hours they actually worked.

This was true whether they worked in Boca Raton or Aventura, Florida (Teich and

Aversano), California (Belshaw), Texas (Munsell) or Maryland (Jasperse).  *See* Ex. A,

(Teich Depo.) at 56 ("He told me you have to put in 8:30 to 12:00 and then 12:30 to

17:00 . . . He told me exactly, it couldn't be any more or any less, it had to be

exactly that."); Ex B (Jasperse Depo.) at 61-62 ("And they just said: Put your hours in

here, . . . and again, it didn't matter how many hours I put in there.  It was only

going to accept 40 . . . . It didn't allow me to accurately put the number of hours

that I worked."); Ex. C (Munsell Depo.) at 25 ("I was given the guidance that we were

not allowed to put in more than 40 hours in a week."); Ex. D (Aversano Depo.) at 34

("I was reprimanded in the very beginning . . . for clocking in overtime.") at 34, 53

("[I was told] that I am not allowed to clock in overtime. . . . I was told to type in

8:00 to 12:00, . . . I was told not to report actual hours."); Ex. B (Belshaw Depo.) at

29-30 ("he made a very clear announcement during the weekly meeting that we were

not to put in overtime. . . . he said . . . you will not be paid overtime, so do not put

anything over 40 hours a week on your time sheet.").

  Sixth, pre-production FAAs regularly worked overtime hours, that is, over 40

hours in a workweek, in order to perform all of the duties required by Morgan Stanley

as part of the rigorous FAA training process during pre-production.  Ex. A (Teich

Depo.) at 26-27, 41 ("we had to work overtime hours in order to pass the exams and

accomplish what had to be accomplished."); Ex. B (Jasperse Depo.) at 73, 77, 79, 90

("My job was to pass the Series 7 no matter what it took"); Ex. C (Munsell Depo.) at

64 ("there was a consensus that the procedure was to enter in no more than 40

hours") at 73 ("I'd say [I worked] approximately [on] average 50 to 55 hours per

week[.]); Ex. D (Aversano Depo.) at 42-43 ("I worked overtime every week. . . . [W]e

went to seminars which we are not clocked in for after hours that were required for

us to be there. . .  I was told . . . [that] if you are going to make a career of this than

you should study, study, study, pass the test, and concentrate on that. . .  This is

what you should be doing.  Study as much as you physically can to insure that you do

pass the test."); Ex. E (Belshaw Depo.) at 22, 28-30, 42 (Belshaw "worked

approximately 65 to 75 hours a week" but was instructed that he could not input any

hours over 40 in a week.  "[A]ter one of the periods where we input the overtime, we

were called into a meeting in which he told about 30 of us it doesn't matter how

much overtime you work, you will always put in 40 hours."  Belshaw spoke with other

FAAs at the national sales meeting and they all told him the same thing, "that they

were working 60, 70, 80 hours a week.  The pressure to be fired, if you don't pass

exams, is enough to push you to study a lot.").

 Seventh, the Program Description for the FAA position is uniform across the

country for pre-production FAAs and probatively demonstrates that Morgan Stanley

subjects FAAs to the same class of requirements.  *See*, Ex. K, MS 1109-1110.

 Eighth, Morgan Stanley's job postings throughout the United States are

essentially identical for 49 of the 50 states.  *See* Composite Ex. L.  Uniformity of job posting supports a similarly situated analysis.  *Sealy v. Keiser Sch., Inc.*, 11-61426-CIV, 2011 WL 7641238, *3 (S.D. Fla. Nov. 8, 2011).

Ninth, Morgan Stanley's pre-production FAAs all are subject to the same Compensation and Performance Guide.  Ex. M, MS 895-909.  Morgan Stanley's Performance Requirements for its pre-production FAAs includes: completion of all course work, passing the Series 7 exam on the first attempt and by the eighth week of pre-production, passing the Series 66 exam by the second attempt, passing both parts of Morgan Stanley's FAA Pre-Production Assessment, and complete all Curriculum Requirements.  *Id.* at MS 897.  All FAAs' compensation has the same three components.  *Id.* at MS 900.

The Court agrees with Plaintiffs that conditional certification is warranted here.   Plaintiffs have shown both a common policy and the requisite degree of commonality.  Plaintiffs have demonstrated that they are similar not only in pay provisions and job duties, but also that they all were subjected to Morgan Stanley's requirements for pre-production FAAs to work off-the-clock.  *Joseph v. Family Pres. Servs. of Florida, Inc.*, 10-81206-CIV, 2011 WL 1790167, *4 (S.D. Fla. May 10, 2011) (job descriptions probative of similarly situated); *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1352 n.10 (S.D. Fla. 2007) (uniform job descriptions relevant to finding that plaintiffs were similarly situated - even under the more rigorous standards for decertification).

Since the filing of the instant motion, five additional FAAs have opted into this case: Luis Lara from Tampa Florida (DE 80); Bernard Dzata from Atlanta, Georgia (DE 84); Peter Hannah from Wauwatosa, Wisconsin (DE 85); Anthony Petruzzi from Boca, Florida (DE 91); and Ali Rahman from Dallas, Texas (DE 92).[2]   The five plaintiffs that have been deposed have testified that they all worked overtime and were explicitly discouraged by Morgan Stanley from recording, or instructed not to record, more than 40 hours in a workweek.   *See* DE 68, Ex. A (Teich Depo.) at 56; Ex. B (Jasperse Depo.) at 61-62; Ex. C (Munsell Depo.) at 25; Ex. D (Aversano Depo.) at 34, 53; Ex. E (Belshaw Depo.) at 29-30.  Collectively, these five individuals worked in four states and five branches, and most of them assert that they witnessed or have knowledge that other pre-production FAAs at either their Morgan Stanley branches or at others worked more than forty hours per week without being paid overtime actually worked. Moreover, Plaintiffs have presented evidence that Morgan Stanley branch managers and supervisors knew that pre-production FAAs were working overtime hours to perform their job functions adequately but nonetheless: (1) told them to not record those hours; (2) altered time records that reflected overtime; (3) demanded that pre-production FAAs who submitted timesheets reflecting overtime change those timesheets; and/or (4) pressured FAAs in such a way as to discourage them from asking for overtime that they actually worked.  Plaintiffs and declarants also assert

---

[2]  This fact defeats Defendants' argument that Plaintiffs have not met their burden of demonstrating other individuals who desire to opt-in.

that, although there was a formal policy of requiring payment for overtime work, FAAs regularly worked overtime "off-the-clock" in order to satisfy the needs of their position.  As a result of Morgan Stanley's de facto policy, Plaintiff and opt-in Plaintiffs state that they did not accurately report their overtime hours.

In an effort to defeat conditional certification, Defendants make a number of arguments, each of which the Court rejects.

First, Defendants contend that pre-production FAAs at Morgan Stanley were each subject to official policies that required them to record accurately all of their time worked, including overtime.  This Court agrees with the district court in Minnesota which wrote, "the mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime."  *Burch v. Quest Comm. Int'l Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007).  Where, as here, Plaintiffs have produced evidence that, in practice, Defendants did not pay them for all of their overtime hours, and in fact encouraged them to understate their hours, the employer's written policies "are insufficient to defeat the motion for conditional certification because an employer's responsibility under the FLSA extends beyond merely promulgating rules to actually enforcing them.  Plaintiffs and declarants aver that, in practice, defendants did not pay them in full for the hours they worked and encouraged them to understate their actual hours.  Defendants' handbook may not immunize defendants from an FLSA action where there is substantial evidence that

they did not follow their own guidelines." *Espenscheid v. DirectSat USA LLC*, 09-CV-625-BBC, 2010 WL 2330309, *7 (W.D. Wis. June 7, 2010) (citing 29 C.F.R. 785.13[3]).

Second, Defendants contend that none of the Plaintiffs assert that they were expressly asked or directed by their managers to perform tasks outside of work hours off-the-clock.  This argument is irrelevant in light of the evidence presented that Morgan Stanley was aware that pre-production FAAs were working overtime, but it routinely prohibited these employees from reporting those hours.

Third, Defendants argue that the what, when and by whom (non-managers vs. managers) Plaintiffs were allegedly told about not entering any overtime hours varied widely.  While how or by whom the message was delivered varied, the message was always the same: don't try and login overtime hours because you will not get it. Whether delivered from their direct supervisor or from that supervisor's assistant, this message supports conditional certification as competent evidence suggesting a company wide collective policy that pre-production FAAs would only get paid for 40 hours a week no matter how many hours it took to satisfy the job's requirements.

Defendants also argue that Plaintiffs are not similarly situated even to each other when it comes to issues of whether and the extent to which they worked

---

[3] "[Management] cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so."

overtime, whether overtime was requested, approved or paid, and whether a

manager knew or should have known that a FAA worked unpaid overtime.

"[E]ngaging in the individualized inquiry proposed by Defendants requires the

Court to indulge in a detailed fact finding determination on the merits, which is

improper at this stage of the litigation. *Anish v. Nat'l Sec. Corp.*, 10-80330-CIV, 2012

WL 1906500, *4 (S.D. Fla. May 25, 2012); *Carmody v. Florida Center For Recovery,*

*Inc.*, No. 05-14295-CIV, 2006 WL 3666964, at *4 (S.D. Fla. Nov. 8, 2006); *see also*

*Leuthold v. Destination America*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants'

arguments in their opposition brief focus on the more stringent second tier analysis

and raise issues that may be more appropriately addressed on a motion for

decertification after notice is given to the proposed class.").

"At this procedural stage, the court does not resolve factual disputes, decide

substantive issues going to the ultimate merits, or make credibility determinations.

Indeed, a court should not weigh the merits of the underlying claims in determining

whether potential opt-in plaintiffs may be similarly situated." *Amador v. Morgan*

*Stanley & Co. LLC*,[4] 11 CIV. 4326 RJS, 2013 WL 494020, *3 (S.D.N.Y. Feb. 7, 2013)

---

[4] The instant case tracks off-the-clock violations asserted by another group of Morgan Stanley employees - Customer Service Associates ("CSAs") - which are essentially the same violations asserted here. The CSA action is pending in the Southern District of New York, *Amador v. Morgan Stanley & Co. LLC*, 11 CIV. 4326 RJS, 2013 WL 494020, *3 (S.D.N.Y. Feb. 7, 2013) ("*Amador*"). In that case, the district court conditionally certified *Amador* as a nationwide collective action based upon Morgan Stanley's alleged failure to pay CSAs for the overtime hours they worked resulting from its alleged policy and practice of requiring CSAs to work off-the-clock. *Id.*

quoting *Lynch v. U.S. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted).  "At the first stage,'any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification.' *Lynch*, 491 F. Supp. 2d at 369. . . 'Upon finding that plaintiffs are 'similarly situated' with other potential opt-ins, a court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action continue as a collective action throughout the discovery process.' *Hernandez v. Merrill Lynch & Co.,* No. 11 Civ. 8472(KBF), 2012 WL 1193836, at *3 (S.D.N.Y. Apr.6, 2012) (internal quotation marks omitted)." *Amador,* 2013 WL 494020 at *3.

<u>Conclusion</u>

In sum, the deposition testimony, notices of consent to join, and other record evidence submitted at this stage of the litigation satisfy Plaintiffs' burden of demonstrating that they were subject to a common policy or practice and were "similarly situated" to one another and to potential class members under either the lenient or the "more searching standard of review."  Hence, the Court is satisfied that notice to potential opt-in class members is appropriate in this case.

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1)      Plaintiffs' Motion to Conditionally Certify an FLSA Collective Action and Authorize Notice to Potential Class Members [DE 68] is granted and this collective action is conditionally certified pursuant to 29 U.S.C. § 216(b) as a collective of:

All current and former pre-production Financial Advisor Associates

("FAAs"), who work and/or worked for Defendants, Morgan Stanley & Co. LLC, f/k/a Morgan Stanley & Co. Incorporated, Morgan Stanley Smith Barney LLC, and Morgan Stanley ("Morgan Stanley") nationwide in the three years preceding the date of this Order and the present.

2)      The parties shall confer and attempt to agree to a proposed notice to the collective class members and shall file it within twenty (20) days of the date of this Order.  The Court instructs the parties to confer and make every attempt to reach a consensus on the language of the notice prior to requesting Court intervention.  If the parties are unable to agree on a proposed notice, Plaintiffs shall file a motion for approval of their proposed notice no later than five (5) days after the deadline for the joint proposed notice and Defendants shall file a response to Plaintiffs' proposed notice within five (5) days of service.

3)      Within 30 days of this Order, Defendants shall deliver to Plaintiffs' counsel a list in an electronic or computer-readable format the full name, address(es), and email address(es) for each of the class members.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of February, 2014.

_____
KENNETH A. MARRA
United States District Judge