# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FRED DEVRIES, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 9:12-cv-81223-KAM |
| v. | |
| MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY, | |
| Defendants. | |
| JASON ZAJONC, et al., individually and on behalf of all others similarly situated,, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 16-cv-80988-KAM |
| v. | |
| MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY, | |
| Defendants. | |
| DARLENE JOHNSON, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 16-cv-80975-KAM |
| v. | |
| MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY, | |
| Defendants. | |
| SHELLEY HIX, individually and on behalf of all others similarly situated, | |

|                                                                                                                                                                              |                          |
| ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | ------------------------ |
|                           Plaintiffs,         | Case No. 16-cv-81024-KAM |
|     v.                                                                                                                                                    |                          |
| MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley & Co. Incorporated, MORGAN STANLEY SMITH BARNEY LLC, and MORGAN STANLEY,                                                        |                          |
|                           Defendants.         |                          |

## **JOINT MOTION FOR APPROVAL OF GLOBAL SETTLEMENT**

Plaintiffs Fred Devries, Ruby Teich, Janine Natoli, Rafael Santiago, Mark Malter, Adam Schwartz, Jason Zajonc, Dennis Fowler, Shelley Hix, Darlene Johnson, and Sally Kolkmeyer, (collectively the "Named Plaintiffs"), individually and on behalf of the groups of individuals who are included in the Global Settlement (collectively the "Settlement Group Members" as more fully defined below), and Morgan Stanley & Co. LLC, Morgan Stanley Smith Barney LLC ("Morgan Stanley"), and Morgan Stanley (collectively the "Defendants"; and together with the Named Plaintiffs, collectively the "Parties") file this Joint Motion for Approval of Global Settlement and respectfully request that the Court approve the Parties' Joint Stipulation of Settlement and Release (the "Agreement")[1] and enter the attached proposed Order and Judgment, which globally resolves the four captioned cases and dismisses these actions with prejudice.

## INTRODUCTION

In addition to the claims filed by the Named Plaintiffs on behalf of themselves and other similarly situated employees, the Agreement resolves claims of the *Devries* and *Zajonc* Settlement Group Members and the *Johnson* and *Hix* Settlement Group Members. As set forth in greater detail below, the Agreement encompasses the claims of 458 individuals (the Named Plaintiffs in each of the four actions and those that have previously opted into *Devries*, *Johnson* and *Hix* and who have not withdrawn or been dismissed ("Opt-In Plaintiffs"). The Parties have agreed, subject to Court approval, to resolve these four wage and hour actions for monetary relief, as more fully set forth below and in the Agreement. The proposed settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant information exchange and contested litigation in four venues, and was the result of arm's length settlement negotiations conducted by experienced counsel well-versed in wage and hour law. Accordingly, the Parties request that the Court: (1) approve as fair, adequate and reasonable the global settlement set forth in the Agreement attached as Exhibit A hereto; (2) approve the proposed Settlement Cover Letters, Notice, and agreement and release for Enhancement Award Plaintiffs attached as Exhibits D, E, F and G to the Agreement and the proposed method for distribution; (3) approve Plaintiffs' Counsel's request for attorneys' fees of $3,707,970.34 and costs in the amount of $461,029.66; (4) approve payment of $26,000.00 to the Settlement Claims Administrator; (5) approve payment of a total of

---

[1]     All capitalized terms used herein shall have the same meaning as defined in the Agreement.

1

$98,000.00 in Enhancement Awards to the eleven Named Plaintiffs and additional thirty-five Enhancement Award Plaintiffs as more fully set forth in the Agreement; (6) allocate $5,000.00 of the Maximum Settlement Amount to the settlement of claims under the California Private Attorney's General Act of 2004 ("PAGA") as more fully set forth in the Agreement; (7) allocate $50,000.00 to a reserve fund; (8) dismiss the *Devries, Zajonc*, *Johnson* and *Hix* Lawsuits with Prejudice, with the Court retaining jurisdiction to enforce the settlement; (9) permanently enjoin the Named Plaintiffs, Enhancement Award Plaintiffs, and other Participating Members (those who negotiate their checks) from pursuing and/or seeking to pursue claims that have been released by the Agreement; and (10) enter the Order and Judgment submitted herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Overview of Parties Involved

This lawsuit was filed on August 8, 2012, in the U.S. District Court for the Southern District of New York and transferred to the U.S. District Court for the Southern District of Florida on October 26, 2012.  The Third Amended Collective and Class Action Complaint asserts collective claims under the Fair Labor Standards Act ("FLSA"), and class claims under Illinois, New Jersey, New York, and Pennsylvania law, on behalf of pre-production Financial Advisor Associate trainees ("FAAs") and seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs.  Conditional Certification of an FLSA collective was granted by Order dated February 7, 2014 (D.E. 93) and the case includes six Named Plaintiffs and 439 Opt-In Plaintiffs.[2]

*Zajonc, et al. v. Morgan Stanley & Co., LLC, et al.*, was filed on December 19, 2014 in the United States District Court for the Northern District of California, asserts class claims on behalf of California FAAs under California law, and seeks recovery of, among other things, overtime wages, compensation for missed meal and rest breaks, inaccurate wage statements,

---

[2]    On August 11, 2015, Plaintiffs in *Devries* moved for final certification of the collective and for class certification of a class consisting of FAAs who worked in Illinois, New York, New Jersey, and Pennsylvania and Defendants moved to decertify the collective.  D.E. 363, 388 and 390.  On August 11, 2015, Defendants filed a motion for summary judgment against Plaintiff Adam Schwartz, and on September 8, 2015, Defendants filed a motion for summary judgment against Opt-In Trevor Campbell.  D.E. 361 and 417.  Additionally, on September 18, 2015, Plaintiffs filed a motion for partial summary judgment.  D.E. 436.  These motions were fully briefed and pending at the time the Parties advised the Court that they were negotiating a settlement of the action.

penalties, liquidated damages, attorneys' fees, and costs ("*Zajonc*").  *Zajonc* was filed by Jason Zajonc, who was also an opt-in in *Devries*; Dennis Fowler later joined the action as a Named Plaintiff.  The *Zajonc* Plaintiffs had not yet moved for class certification at the time the Parties began settlement negotiations.  Pursuant to the agreement of the Parties as set forth in the Agreement, *Zajonc* was transferred to this Court for purposes of seeking settlement approval by Order dated June 13, 2016.

The Named Plaintiffs in *Devries* and *Zajonc*, all persons who have previously opted into *Devries* and who have not withdrawn or been dismissed as of April 11, 2016, including Agnes Aponte and Sara Motiey (who had moved to withdraw), and the declarants listed in Exhibit A to the Agreement are collectively referred to as the "*Devries* and *Zajonc* Settlement Group Members."

*Johnson, et al. v. Morgan Stanley & Co. LLC, et al.*, was filed on June 24, 2015 in the United States District Court for the Southern District of New York, asserts collective claims on behalf of Morgan Stanley Client Service Associates ("CSAs") under the FLSA, and seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs ("*Johnson*").  *Johnson* includes two Named Plaintiffs and nine Opt-Ins.  The *Johnson* Plaintiffs had not yet moved for collective certification at the time the Parties began settlement negotiations. While the *Johnson* Plaintiffs did file a collective certification motion, the settlement was reached before Defendants' response was due.  Pursuant to the agreement of the Parties as set forth in the Agreement, *Johnson* was transferred to this Court for purposes of seeking settlement approval by Order dated June 13, 2016.

*Hix v. Morgan Stanley & Co., LLC, et al.*, which was filed on January 13, 2015, in the U.S. District Court for the Southern District of New York and subsequently transferred to the District of Maryland, asserts collective claims on behalf of Morgan Stanley Service Associates ("SAs") under the FLSA, and seeks recovery of, among other things, overtime wages, liquidated damages, attorneys' fees, and costs ("*Hix*").  *Hix* includes one Named Plaintiff and one Opt-In. The *Hix* Plaintiffs had not yet moved for collective certification at the time the Parties began settlement negotiations. Pursuant to the agreement of the Parties as set forth in the Agreement, *Hix* was transferred to this Court for purposes of seeking settlement approval by Order dated June 14, 2016.

3

The Named Plaintiffs in *Johnson* and *Hix* and all persons who have previously opted into *Johnson* or *Hix* and who have not withdrawn or been dismissed as of April 11, 2016 are collectively referred to as the "*Johnson* and *Hix* Settlement Group Members." The "*Devries* and *Zajonc* Settlement Group Members" and the "*Johnson* and *Hix* Settlement Group Members" together are referred to as the "Settlement Group Members." There are a total of 458 Settlement Group Members, including the Named Plaintiffs.

## II.    Overview of Claims and Investigation

### A. *Devries* and *Zajonc*

While the two cases are at different procedural stages, Plaintiffs' factual allegations in *Devries* and *Zajonc* are virtually identical. The claims resolved by the Agreement relate to off-the-clock hours allegedly worked by the *Devries* and *Zajonc* Settlement Class Members for which they contend they were not properly compensated. Newly hired FAAs participate in an approximately 16 to 20 week pre-production training period, during which they are classified as non-exempt. Plaintiffs allege that FAAs' duties include the completion of the required FAA Training Program course work, studying for and passing the Series 7 exam, studying for and passing the Series 66 exam, studying for and passing the FAA Pre-Production Assessment exams, attending meetings, completing all FAA Training Program curriculum requirements and attending national performance sessions. The *Devries* and *Zajonc* Settlement Class Members contend that they regularly worked significantly more than 40 hours in a workweek for Morgan Stanley's benefit during the pre-production training period, including study time which they likewise contend is compensable work, without being paid overtime for hours worked in excess of 40 per workweek.

Since *Devries* was first filed almost four years ago, the FAAs' claims have been extensively litigated, including a motion to transfer the case from New York to Florida, eleven discovery motions, a successful motion for conditional certification of the collective, three pending motions for summary judgment (including on the issue of whether study time is compensable), pending motions for final certification and decertification of the collective, and a pending motion for certification of four Rule 23 state classes. In addition, the Parties engaged in extensive discovery, including written interrogatories and requests for production served on thirty-eight Named Plaintiffs, class representatives, and opt-ins all of whom sat for deposition, as well as multiple sets of written discovery served on the Defendants and additional opt-ins, and

the taking of many more fact depositions of additional fact witnesses, experts and corporate representatives across the country.  The Parties also exchanged over 85,000 pages of documents, including voluminous ESI.

In *Zajonc*, the Parties briefed and argued a motion to dismiss, stay, or transfer, exchanged written discovery and documents, conferred extensively on multiple discovery disputes and filed motions to compel, extensively researched numerous issues, exchanged and analyzed data, including a significant amount of ESI, took three depositions, interviewed additional class members, and Plaintiffs began gathering declarations and drafting a class certification motion. In addition, much of the discovery taken in *Devries* benefitted the *Zajonc* case pursuant to an agreement to share discovery between those cases.

As a result of the extensive discovery undertaken in both cases, the Parties have been able to evaluate potential liability and damages and to determine the approximate value of each *Devries* and *Zajonc* Settlement Group Member's claim.

### B.  *Johnson and Hix*

The claims of the *Johnson* and *Hix* Settlement Group Members are likewise similar. Both CSAs and SAs are non-exempt office employees who contend that they regularly worked more than 40 hours in a workweek for Morgan Stanley's benefit without being paid overtime for hours worked in excess of 40 per workweek.  *Johnson* was filed on the heels of the settlement of a virtually identical case involving CSAs, *Amador, et al. v. Morgan Stanley & Co., LLC, et al,* 11 CV 4326 (S.D.N.Y.).  The *Amador* case resolved with an Order granting final approval of settlement entered on December 22, 2014, after more than three years of heavily contested litigation, including payment to more than 1500 named plaintiffs, participating New York class members, and opt-ins.  *See* S.D.N.Y. Case No. 11-cv-4326 (RJS) at ECF 188.[3]

In addition to the extensive knowledge gained by counsel from the *Amador* litigation, in *Johnson*, the Parties exchanged written discovery and documents, four depositions were taken and the Parties briefed and argued numerous discovery issues and Plaintiffs gathered and produced additional records from third parties.  Plaintiffs also interviewed additional collective members, obtained declarations, and filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b).  The court expressed some reluctance to

---

[3]     CSAs and SAs reported working considerably less overtime than FAAs and not in every workweek.

certify another collective action with the same members as in *Amador*. August 14, 2015 Hearing Transcript at 9. While that motion was pending, Plaintiffs also opposed Defendants' attempt to file summary judgment motions against the named Plaintiffs during the conditional certification phase of the case.

Similarly, in *Hix* both Parties served and responded to written discovery requests, produced and reviewed documents and served motions to compel. The Parties were preparing for depositions and Plaintiffs were drafting their motion for conditional certification and supporting declarations at the time the case settled.

As a result of the extensive discovery undertaken in both cases, as well as *Amador*, the Parties have been able to evaluate potential liability and damages and to determine the approximate value of each *Johnson* and *Hix* Class Member's claim.

**III.    History of Settlement Negotiations**

The Parties have engaged in two full day private mediations of the claims asserted in *Devries* and *Zajonc* with experienced FLSA mediators, first with Michael Dickstein in December 2014, and then with David Rotman in September 2015, both of whom have particular expertise mediating FLSA collective actions. Although the Parties were unable to settle at either of these mediations, they continued discussing settlement options while the litigations continued. The Parties began negotiating toward a global resolution of all four cases in the fall of 2015 and on January 25, 2016, after making significant progress towards establishing a settlement framework that would include all Settlement Group Members and attorneys' fees and costs, they filed their Joint Motion to Stay the Proceedings [D.E. 499] and filed several additional motions to extend that stay [D.E. 501, 503] while they negotiated regarding the details and calculation of the specific settlement amounts for each settlement group and a separate amount for attorney's fees and costs, as well as the best mechanism to achieve a full and final settlement for all four of the pending litigations and eventually signed a Memorandum of Understanding on March 8, 2016 setting forth the basic framework of the settlement agreed to by the Parties. The Parties then advised the Court that the case had been settled [D.E. 505] and negotiated for several more months [D.E. 509, 511, and 513] until they finalized the terms of a more detailed Agreement which was not fully executed until June 29, 2016. *See* Exhibit A. *Zajonc*, *Johnson* and *Hix* also were stayed until they ultimately were transferred to this Court to be settled along with *Devries*.

<u>**SUMMARY OF THE SETTLEMENT TERMS**</u>

**I.      The Maximum Settlement Amount**

The Parties have agreed that the Maximum Settlement Amount will be $5,995,000.00 (the "Maximum Settlement Amount"), which shall include all claims in the Litigations, all attorneys' fees, litigation costs, Settlement Administration Expenses, payments to Settlement Group Members, PAGA payments, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes which shall be paid separately by Defendants), interest, a Reserve Fund, and Enhancement Awards.  *See* Exhibit A at 3.1(A).

**II.     Eligible Class Members**

"*Devries* and *Zajonc* Settlement Group Members" shall mean the Named Plaintiffs in *Devries* and *Zajonc*, all persons who have previously opted into *Devries* and who have not withdrawn or been dismissed as of April 11, 2016, including Agnes Aponte and Sara Motiey, and the declarants listed in Exhibit A to the Agreement.  *See* Exhibit A at 1.7.

"*Johnson* and *Hix* Settlement Group Members" shall mean the Named Plaintiffs in *Johnson* and *Hix* and all persons who have previously opted into *Johnson* or *Hix* and who have not withdrawn or been dismissed as of April 11, 2016.  *Id.* at 1.14.

**III.    Settlement Group Allocation Formula**

Each Settlement Group Member's estimated share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the formula set forth in section 3.7 of the Agreement attached as Exhibit A.

The Net Settlement Fund shall be the amount of money remaining from the Maximum Settlement Fund after deducting (a) the amount requested for attorneys' fees and costs and Settlement Administrator Expenses; (b) amounts for Enhancement Awards approved by the Court; (c) amounts for the Reserve Fund; and (d) amounts for PAGA payments pursuant to Section 3.6.  *See* Exhibit A at 3.7, which amount shall be redistributed to the California members of the *Devires* and *Zajonc* Settlement Group.

The Net Settlement Fund shall be allocated first to the *Johnson* and *Hix* Settlement Group Members each of whom will have his or her individual Applicable Workweeks multiplied by the same per workweek amount paid to CSAs in settlement of the *Amador* case and previously approved by the court there, and that amount shall be each *Johnson* and *Hix* Settlement Group Member's Individual Settlement Amount.

7

After the payments are allocated to the *Johnson* and *Hix* Settlement Group Members, the "Balance Net Settlement Fund" will be divided by the aggregate number of Applicable Workweeks accrued by all of the *Devries* and *Zajonc* Settlement Group Members ("Initial Workweek Value"). Each *Devries* and *Zajonc* Settlement Group Member's total Applicable Workweeks will be multiplied by the Initial Workweek Value to determine his or her "Initial Settlement Amount." Notwithstanding the above, any *Devries* and *Zajonc* Settlement Group Member with an Initial Settlement Amount of less than $200.00 will be allocated $200.00 (the "Minimum Individual Settlement Amount") as their Individual Settlement Amount. After determining *Devries* and *Zajonc* Settlement Group Members who will be allocated the Minimum Individual Settlement Amount, the workweek value shall be recalculated for all other *Devries* and *Zajonc* Settlement Group Members as follows: the balance of the Net Settlement Fund after deducting amounts allocated to those *Devries* and *Zajonc* Settlement Group Members receiving the Minimum Individual Settlement Amount, will be divided by the Applicable Workweeks for the *Devries* and *Zajonc* Settlement Group Members who do not receive the Minimum Individual Settlement Amount to determine the "Final Workweek Value". The Applicable Workweeks for each *Devries* and *Zajonc* Settlement Group Member who is not a Minimum Amount Settlement Group Member will be multiplied by the Final Workweek Value to determine his or her Individual Settlement Amount. *Id.*

In addition, each *Devries* and *Zajonc* Settlement Group Member who worked for Defendants in California, will receive a pro rata share of $1,250.00, the amount allocated to them to settle their PAGA claims, based on their pro-rata workweeks pursuant to Section 3.6. *Id.*

The calculation of Applicable Workweeks pursuant to the Agreement shall be based on Defendants' business records, subject to the dispute resolution process set forth in the Agreement.

To put this in perspective, each *Devries* and *Zajonc* Settlement Group Member's share will equate to an additional 6.10 hours per week for each week worked as a pre-production FAA at time and one half their average hourly rate for the four year statute of limitations if they worked in California, for the six year status of limitations if they worked in New York and for the three year statute of limitations if they worked anywhere else.

## IV.    Releases

Settlement Group Members who participate in the settlement by negotiating their Settlement check ("Participating Settlement Group Members") will release wage and hour claims of any type, including all state law and FLSA claims and penalties (including civil and statutory penalties, including penalties under PAGA), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, equitable relief, or additional damages that allegedly arise from any wage and hour claims under any applicable law through thirty days after entry of the Final Order and Judgment.  Settlement Group Members who do not participate will not release any claims.  The Named Plaintiffs and Enhancement Award Plaintiffs will release as a part of the settlement all claims of any type against Defendants through the date that the applicable Named Plaintiff executes the Agreement or the Enhancement Award Plaintiff executes the agreement and release for Enhancement Award Plaintiffs.  The Agreement also contains a "Limited Carve Out" For Participating Members from the *Devries* and *Zajonc* Settlement Group for claims that were pending as of March 8, 2016, by or on behalf of any member of the *Devries* and *Zajonc* Settlement Group, including but not limited to claims pending in *In re: Morgan Stanley Smith Barney LLC Wage and Hour Litigation*, Case No. 2:11-cv-03121 (D.N.J.).  Exhibit A at 3.9.

## V.    Enhancement Awards

The Agreement provides Plaintiffs will seek Enhancement Awards for the 11 Named Plaintiffs and 35 additional Enhancement Award Plaintiffs in recognition of the assistance they provided in obtaining the overall settlement for the Settlement Group Members.   The Enhancement Award Plaintiffs provided substantial assistance to Plaintiffs' counsel, including extensive meetings, conferences, review of documents, responding to written discovery and sitting for deposition.  In addition, the Named Plaintiffs lent their names to the litigations.   The Agreement provides for Enhancement Awards from the Settlement Fund for the Named Plaintiffs and Enhancement Award Plaintiffs in the amounts as follows: $10,000.00 to Fred Devries, $8,000.00 to Ruby Teich, $5,000.00 each to Dennis Fowler, Shelley Hix, Darlene Johnson, Sally Kolkmeyer, Mark Malter, Janine Natoli, Rafael Santiago, Adam Schwartz, and Jason Zajonc, and $1,000.00 each to the 35 Enhancement Award Plaintiffs listed in Exhibit B to the Agreement, all of whom were deposed in one of the actions being settled.  Agreement at 3.3.

## VI.     Attorneys' Fees and Litigation Costs and Expenses and Settlement Claims Administration.

Under the terms of the Parties' Agreement, subject to Court approval, the Parties agree that Plaintiffs' counsel will seek an award of attorneys' fees, reimbursement of reasonable litigation costs and expenses, and Settlement Administration Expenses, from the Settlement Fund, which shall not exceed $4,195,000.00 as compensation for their work in all four of the litigations over the last four years and the additional work to be performed in connection with the administration of the settlement.  Exhibit A at 3.2(A).  Of that sum, $26,000.00 is to be paid to Rust Consulting for its services as Settlement Claims Administrator, $326,878.21 is reimbursement of costs incurred in *Devries*, $81,532.71 is reimbursement of costs incurred in *Zajonc*, $32,755.93 is reimbursement of costs incurred in *Johnson*, and $19,862.81 is reimbursement of costs incurred in *Hix*, leaving a balance for attorneys' fees of $3,707,970.34 Plaintiffs' counsel have incurred fees of $3,667,505.50 in *Devries*, $1,180,667.00 in *Zajonc*, $398,578.00 in *Johnson*, and $196,637.00 in *Hix*, for a collective lodestar of $5,443,387.50. Thus, the requested fee of $3,707,970.34 for their work in all four cases is significantly less than the actual fees incurred and represents a negative multiplier of .68.  Plaintiffs' counsel are seeking this fee award in lieu of attorney's fees that Plaintiffs' counsel might otherwise have been entitled to recover under 29 U.S.C. Section 16(b) had they ultimately prevailed in the Lawsuits.

## VII.    Reserve Fund and Cy Pres

Fifty Thousand Dollars ($50,000.00) of the Maximum Settlement Fund shall be held by the Settlement Administrator to be used as a Reserve Fund which can be used to address any Settlement Group Member disputes and the claims of any individuals with a good-faith claim that they should have been but were not included as a Settlement Group Member.  *See* Exhibit A at 3.5

## VIII.   LWDA Private Attorney General Act Payment.

Five Thousand Dollars ($5,000.00) of the Maximum Settlement Amount shall be allocated as settlement of claims under PAGA. Seventy-five percent (75%) of that total or, $3,750.00, shall be paid to the LWDA pursuant to the provisions of PAGA. The remaining twenty-five percent (25%), or $1,250.00, shall be distributed to the *Devries* and *Zajonc*

Settlement Group Members who worked for Defendants in California anytime from August 7, 2014 through the date of the Order and Judgment.  *See* Exhibit A at 3.6.

## ARGUMENT

### I.      Standards for FLSA Settlements

Under prevailing Eleventh Circuit case law, the parties to an FLSA action can resolve the dispute and enter into a valid waiver of the employee's FLSA claims in either of two ways. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  29 U.S.C. § 216(c); *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, an employee may settle and waive claims under the FLSA if the parties present a proposed settlement to a district court which approves the fairness of the settlement.  *Lynn's Food Stores*, 679 F.2d at 1353.  In discussing the approval of FLSA settlements, the Eleventh Circuit has noted:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

"The Court should be mindful of the strong presumption in favor of finding a settlement is fair." *Ford v. Property Preservation Experts, Inc*., 2012 U.S. Dist. Lexis 107194 at *3 (M.D. Fla. July 31, 2012) (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)).  An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed.  *Rutland v. Visiting Nurse Assoc. of Central Fla., Inc*., 2008 U.S. Dist. Lexis 61776 (M.D. Fla. July 29, 2008).  Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed.  *See id.* (approving FLSA settlement where named plaintiff settled for approximately 6% of the wages

she originally claimed).  In addition, the dispute over liquidated damages and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement then originally claimed.  *See Ford, supra* (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages).

## II.    The Back Wages Payment Is Fair and Reasonable

Here, Plaintiffs believe the settlement is fair because it is a reasonable compromise of the claims of the Settlement Group Members.  As discussed above, the settlement encompasses all weeks worked by the Settlement Group Members within their applicable statutes of limitations. Although the FLSA typically provides for a two year statute of limitations, the Parties here utilized a full three year statute of limitations period and for those Settlement Group Members who worked in New York or California the maximum six and four year state statutes of limitations.

On average, each Participating *Devries* and *Zajonc* Settlement Class Member will receive payment equivalent to more than 6.23 hours per week paid at time and one half their regular hourly rate.  Plaintiffs believe that this amount represents a very fair settlement given the amount of unpaid overtime that was claimed, the uncertainty of success on collective certification, and Defendants' defenses on the merits, including its contention that that it provided paid time during the workweek for studying during training weeks and that it took steps to prevent its employees from studying off the clock.[4]

---

[4]    In moving to decertify the collective action, and challenging Plaintiffs' motions for final FLSA certification and class certification, Defendants argued that this case requires individualized inquiries on numerous issues, including whether each trainee actually worked, needed to work, recorded, requested permission for, and was paid for overtime; what each trainee was told about time recording and overtime at the branch level and by whom; whether each branch manager approved the overtime, and knew or should have known about any unpaid overtime; whether the particular activities undertaken after hours were compensable; whether Defendants have any additional defenses to an individual trainee's claim; and numerous damages issues (such as the precise damages amounts, the extent to which the alleged overtime work each trainee did was for Defendants' benefit as opposed to their own, and issues of willfulness and good faith for each of the 433 Plaintiffs and Opt-Ins in the collective).  *See* D.E. 388, 423, 426, 452.  Moreover, in moving for summary judgment against Plaintiff Adam Schwartz, Defendants noted that at least two Circuit Courts of Appeals and a District Court have held that under the FLSA, as amended by the Portal-to-Portal Act, training is not compensable if it is a precondition for the job that the employer allows to be satisfied while the employee is working on a probationary basis, and Defendants also argued that Schwartz's alleged overtime was not compensable under the DOL's training time regulations because Morgan Stanley satisfied all the

Each Participating *Johnson* and *Hix* Settlement Class Member will also receive payment equivalent to that approved by Judge Sullivan in the *Amador* case.

Each of the Settlement Group Members, other than the Named Plaintiffs (who have each signed the Agreement) and the Enhancement Award Plaintiffs (who will each have signed an agreement and release for Enhancement Award Plaintiffs), will receive notice of the terms of the settlement, in substantially the form attached as Exhibit G to the Agreement, and will be able to choose whether or not to knowingly accept the consideration provided for in the Agreement in return for their release of wage and hour related claims.

Given these factors, the amount paid to each Settlement Group Member and the formula according to which each Settlement Group Member will receive their share, the Agreement represents a fair and reasonable compromise of the claims in the four actions covered by the Agreement.

## III.  The Proposed Notice and Settlement Cover Letters Should Be Approved

The Court should also approve the proposed Settlement Cover Letters and Settlement Notice, copies of which are attached as Exhibits D, E and G, respectively.  The proposed Settlement Notice sufficiently inform each Settlement Group Member of the terms of the settlement, including the amount they will receive individually, the scope of the release, and the attorneys' fees and costs that were approved.  The Cover Letters to accompany the checks mailed to the Named Plaintiffs is perfunctory as each will already be fully familiar with the terms of the Settlement having signed the Agreement. The Cover Letters to the Enhancement Award Plaintiffs is also perfunctory as each Enhancement Award Plaintiff will previously have been advised by Plaintiffs' counsel of the terms of the Agreement and as well as the terms of the terms of the agreement and release for Enhancement Award Plaintiffs which they can voluntarily elect to sign in order to receive an Enhancement Award.

---

requirements of those regulations.  *See* D.E. 361.  And in moving for summary judgment against Opt-In Trevor Campbell, Defendants argued that Campbell's overtime claims fail because he cannot meet his burden of proving that his employer knew or should have known of his alleged overtime, and because he cannot offer sufficient proof of the amount and extent of his alleged unpaid overtime.  *See* D.E. 417.  Thus, while Plaintiffs disagree with and contested all of these arguments, there was significant risk present which Plaintiffs concluded supported settlement on these terms.  *See* D.E. 432, 445, 451, and 469.

## IV.     The Enhancement Awards Should Be Approved

The Settlement provides for Enhancement Awards to 11 Named Plaintiffs and 35 Enhancement Award Plaintiffs in recognition of the assistance they provided in obtaining the overall settlement for the Settlement Group Members.  Plaintiffs believe that the Named Plaintiffs and Enhancement Award Plaintiffs will be adequately compensated by the Enhancement Awards for their diligence, commitment and investment -- in terms of time, money and "sweat equity."  Mr. Devries and Ms. Teich first identified the claims asserted on behalf of the *Devries* and *Zajonc* Settlement Group Members and provided substantial assistance to Plaintiffs' counsel, including extensive meetings and conferences and review of documents.  The other Named Plaintiffs lent their names to the four lawsuits.

In addition to their roles in their respective lawsuits, each of the Named Plaintiffs and Enhancement Award Plaintiffs participated in innumerable conferences, regularly communicated with their attorneys, provided valuable information, reviewed documents, responded to written interrogatories and document requests, and sat for depositions.  In addition, they were very helpful to their counsel in analyzing and interpreting all the documents, data and information that Defendants produced during the litigations.

Given the time and effort expended by these Named Plaintiff s and Enhancement Award Plaintiffs, Enhancement Awards are warranted in this action, as has been held by numerous federal courts in Florida.  *See, e.g., Mosser v. TD Bank, N.A. (In re Checking Account Overdraft Litig.*, MDL No. 2036), 2013 U.S. Dist. LEXIS 187627, *91 (S.D. Fla. Mar. 18, 2013) (granting incentive award to named plaintiffs in Rule 23 class for the actions they took to protect the claimants, the degree to which others benefited, and the amount of time and effort the plaintiffs expended); *Torres v. Bank of Am.(In re Checking Account)*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) ("[t]here is ample precedent for awarding incentive compensation[.] (citing *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006)); *David v. Am. Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, *19-20 (S.D. Fla. Apr. 15, 2010) (granting incentive award in Rule 23 class action were plaintiff "participated actively in the ligation from start to finish[.]"); *see also, Hosier v. Mattress Firm, Inc.,* 2012 U.S. Dist. Lexis 94958 (M.D. Fla. June 8, 2012) (FLSA action); *Su v. Electronic Arts, Inc.*, 2006 U.S. Dist. Lexis 98894 (M.D. Fla. Aug. 29, 2006) (FLSA action); *Signorelli, et al. v. UtiliQuest*, 2008 U.S. Dist. Lexis 109357 (M.D. Fla. July 25, 2008) (hybrid FLSA/Rule 23 action).   Enhancement Awards to compensate

named and opt-in plaintiffs for their diligence, fortitude and involvement are routinely approved in FLSA collective actions. *See Hosier*, *Su*, *Signorelli*, *supra*; *see also, Shores v. Publix Super Markets, Inc.*, Case No.: 95-1162-CIV-T-25E, D.E. 319, at 90-91 (M.D. Fla. May 23, 1997) (named plaintiffs provided additional compensation for signing a full release of claims, for time spent in depositions, for risk of litigation, and for expending substantial time and effort); *Palacios v. E\*Trade Financial Corp.*, Case No.: 10-4030, D.E 79 (S.D.N.Y. June 22, 2010) (approving $6,500 Enhancement Awards to each named plaintiff); *Nash v. CVS Caremark Corp.*, Case No.: 09-079, Dkt. 137 (D.R.I. Apr. 12, 2012) (approving $5,000 incentive payments for FLSA named plaintiffs); *Caissie v. BJ's Wholesale Club*, Case No.: 08-30220-MAP (D. Mass. June 24, 2010) ($10,000 incentive awards approved in connection with settlement of FLSA/state law wage and hour class and collective action).

## V.     The Attorneys' Fees and Costs Are Reasonable and Should Be Approved

Additionally, the Parties have agreed that Plaintiffs' counsel will receive $4,195,000.00 of the Maximum Settlement Amount as attorneys' fees and costs and settlement administration expenses, as indicated in Exhibit A. Pursuant to the Agreement, any attorneys' fees or expenses not awarded by the Court will revert to Defendants. Thus, the Court's award of attorneys' fees and costs will not reduce, diminish or otherwise compromise the back-wages and other payments to the Settlement Group Members. Rather, the attorneys' fees and costs are above and beyond the amount to be paid to the Settlement Group Members, such that their recoveries are not reduced due to the fees and costs incurred on their behalf.

Of the total award sought of $4,195,000.00 for fees and costs and settlement administration expenses, $461,029.66 represents actual costs and expenses incurred by Plaintiffs' counsel, including court fees, service of process, arbitration fees, deposition transcript and video fees, photocopying, postage/express mail, telephone, Pacer/Lexis research, and mediation costs. The expenses incurred in the prosecution of this case are reflected on the books and records of Plaintiffs' counsel, which are available for submission to the Court upon request. These books and records are prepared from expense vouchers, receipts, and check records; are accurate regarding all the expenses incurred; and constitute hard, out-of-pocket monetary expenses from the beginning of the case. Plaintiffs' counsel was aware such costs and expenses might not be recovered and, at the very least, would not be recovered until the litigation was successfully resolved.

Of the total award sought of $4,195,000.00 for fees and costs and settlement administration expenses, $26,000.00 represents actual costs and expenses incurred by Plaintiffs' counsel to be paid to the Settlement Claims Administrator for formatting, printing and mailing the notice packets; calculating individual settlement amounts and distributing checks; determining and remitting tax withholdings; communicating with counsel for the Parties and Settlement Group Members; and performing other activities and services associated with the administration of the settlement.   This amount is the cap proposed by Rust Consulting in connection with their bid to be retained as Claims Administrator.  Rust was the low bidder.

The balance of $3,707,970.34 represents an award of attorneys' fees for the work performed by Plaintiffs' counsel.  The total lodestar to date for the work performed by all four firms representing the Settlement Group Members in the four litigations is $5,443,387.50.  This reflects the time actually spent, in the exercise of reasonable judgment by the lawyers and staff involved and is reflected in the detailed time records for each of the firms.  The work undertaken represents the work addressed above in connection with the investigation and filing of the lawsuit and related arbitrations, the work undertaken in conjunction with the discovery of the case and the work involved in negotiating and effectuating the Settlement.  Each of the firms involved in the case had expertise and knowledge with respect to aspects of the litigation, including extensive and successful records in class action and wage hour litigation.  The firms also communicated regularly so as to ensure that there was not unnecessary time incurred, nor duplication of effort.

Plaintiffs' counsel's request for payment of fees in the amount of $3,707,970.34 represents a negative multiplier of .68.  Given the risks presented by the multiple litigations and the results obtained, this multiplier is decidedly reasonable.  Based on our experience, we also expect that there will be significant time spent by Plaintiffs' counsel in the future administering the claims process and this settlement, resolving issues with the Settlement Claims Administrator and Defendants' counsel, and speaking with Settlement Group Members about the administration and the Settlement, bringing the multiplier even further below one.   Although the attorneys' fees and costs appear high in comparison to the overall recovery, as discussed above, the dollar value of each claim is relatively low because the settlement of the *Devries* and *Zajonc* claims involves only a limited number of training weeks.  More importantly, the attorneys' fees cover the filing

and prosecution of four separate lawsuits.  Defendants do not oppose the amount to be allocated as attorneys' fees and costs as set forth in the Parties' Agreement.

The settlement of attorneys' fees and costs was independent and agreed upon separately from the amounts calculated to be owed to Settlement Group Members.  "[W]hen attorney's fees are negotiated separately from the payment to plaintiff(s), 'an in depth analysis [of the reasonableness of the fees] is not necessary unless the unreasonableness is apparent from the face of the documents."  *Gertz v. Coastal Reconstruction*, 2014 U.S. Dist. LEXIS 130302, *5 (M.D. Fla. Sept. 10, 2014) (citing *McGinnis v. Taylor Morrison*, Inc., 2010 U.S. Dist. LEXIS 143198 (M.D. Fla. Jan. 23, 2010); *King v. My Online Neighborhood, Inc*., 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Mar. 7, 2007)) (internal bracket in original); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (same).  "As long as counsel does not seek to recover anything further from Plaintiff, the recovery is not compromised by the fee agreement and the Court sees no reason to review it further."  *Garzon v. ProSweep Cent. Fla., LLC*, 2011 U.S. Dist. LEXIS 134703, *6 (M.D. Fla. Nov. 17, 2011).  Thus, there is "no need to further scrutinize amount allocated for attorneys' fees and costs [as] they were negotiated separately and apart from the compensation paid to Plaintiff."  *Welch v. Moonlite Hospitality Servs*., *LLC*, 2011 U.S. Dist. LEXIS 137145, *5, n. 2 (M.D. Fla. Nov. 28, 2011) (citations omitted).  Accordingly, Plaintiffs' request for attorneys' fees, costs, and settlement administration expenses should be approved.

## CONCLUSION

The Settlement is reasonable and fair in all respects, particularly considering that at all times this litigation and the associated arbitration claims were vigorously contested.  Accordingly, the Parties respectfully request the Court approve the settlement by entering the proposed Final Order and Judgment which will (1) approve as fair, adequate and reasonable the global settlement set forth in the Agreement attached as Exhibit A; (2) approve the proposed Settlement Cover Letters, Notice, and agreement and release for Enhancement Award Plaintiffs attached as Exhibits D, E, F, and G to the Agreement and the proposed method for distribution; (3) approve Plaintiffs' Counsel's request for attorneys' fees of $3,707,970.34 and costs in the amount of $461,029.66; (4) approve payment of $26,000.00 to the Settlement Claims Administrator; (5) approve payment of a total of $98,000.00 in Enhancement Awards to the eleven Named Plaintiffs and additional thirty-five Enhancement Award Plaintiffs as more fully set forth in the

Agreement; (6) allocate $5,000.00 of the Maximum Settlement Amount to the settlement of claims under PAGA as more fully set forth in the Agreement; (7) allocate $50,000.00 to a reserve fund; (8) dismiss the *Devries, Zajonc*, *Johnson* and *Hix* Lawsuits with Prejudice, with the Court retaining jurisdiction to enforce the settlement; (9) permanently enjoin the Named Plaintiffs, Enhancement Award Plaintiffs, and other Participating Members (those who negotiate their checks) from pursuing and/or seeking to pursue claims that have been released by the Agreement; and (10) grant such other and further relief as this Court deems just and proper. Respectfully submitted this 29 of June, 2016.

| | |
|---|---|
| **s/ Gregg I. Shavitz** | **s/ Mark E. Zelek** |
| Gregg I. Shavitz, Esq. | Mark E. Zelek, Esq. |
| Florida Bar No. 11398 | Florida Bar No. 667773 |
| E-mail: gshavitz@shavitzlaw.com | E-mail:  mzelek@morganlewis.com |
| Susan H. Stern, Esq. | Voula E.A. Liroff, Esq. |
| Florida Bar No. 857726 | Florida Bar No. 72447 |
| E-mail: sstern@shavitzlaw.com | E-mail: vliroff@morganlewis.com |
| Paolo C. Meireles, Esq. | **MORGAN, LEWIS & BOCKIUS, LLP** |
| Florida Bar No. 91551 | 200 South Biscayne Boulevard, Suite 5300 |
| E-mail: pmeireles@shavtizlaw.com | Miami, FL 33131 |
| **SHAVITZ LAW GROUP, P.A** | Telephone: (305) 415-3330 |
| 1515 S. Federal Highway, Suite 404 | Facsimile: (877) 432-9652 |
| Boca Raton, FL 33432 | |
| Telephone: (561) 447-8888 | |
| Facsimile: (561) 447-8831 | Sam S. Shaulson, Esq. (admitted *pro hac vice)* |
| | E-mail:  sshaulson@morganlewis.com |
| Seth R. Lesser, Esq. (admitted *pro hac vice*) | **MORGAN LEWIS & BOCKIUS LLP** |
| E-mail: seth@klafterolsen.com | 101 Park Avenue |
| **KLAFTER, OLSEN & LESSER, LLP** | New York, NY  10178 |
| Two International Drive, Suite 350 | Telephone:  212-3-0-6718 |
| Rye Brook, NY 10573 | |
| Telephone: (914) 934-9200 | |
| Facsimile: (914) 934-9220 | Thomas L. Linthorst, Esq.(*admitted pro hac vice*) |
| | E-mail: tlinthorst@morganlewis.com |
| ***Attorneys for all Plaintiffs and Opt-Ins*** | **MORGAN LEWIS & BOCKIUS, LLP** |
| | 502 Carnegie Center |
| Jahan C. Sagafi, Esq. (Cal. Bar No. 224887) | Princeton, NJ 605840 |
| E-mail: jsagafi@outtengolden.com | Telephone: (609) 919-6642 |
| **OUTTEN & GOLDEN LLP** | Facsimile: (609) 919-6701 |
| One Embarcadero Center, 38th Floor | |
| San Francisco, CA 94111 | ***Attorneys for Defendants*** |
| Telephone: (415) 638-8800 | |
| Facsimile: (415) 638-8810 | |

|  |  |
|---|---|
| ***Additional counsel for Plaintiffs and Opt-Ins in Zajonc***<br><br>Nicholas Migliaccio, Esq.(MD Bar No. 29077)<br>E-mail: <u>nmigliaccio@wbmllp.com</u><br>**MIGLIACCIO LAW FIRM PLLC**<br>438 16th St SE<br>Washington, DC 20003<br>Telephone:      202-470-3520<br>Facsimile:      202-810-0081<br><br>***Additional counsel for Plaintiff and Opt-In in Hix*** |  |